IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KIMBERLY AIGNER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AG BELLS II LLC; AG BELLS, LLC; and DOES 1 to 25,<br><br>Defendants. | Case No. 1:25-cv-01287<br><br>**NATIONWIDE CLASS ACTION COMPLAINT** |

**NATIONWIDE CLASS ACTION COMPLAINT**

COMES NOW, Plaintiff KIMBERLY AIGNER ("Plaintiff"), on behalf of herself and all others similarly situated, and asserts as follows:

**INTRODUCTION**

1. Plaintiff Kimberly Aigner, a person with a mobility disability who uses a wheelchair for mobility, brings this action individually and on behalf of all others similarly situated against Defendants AG Bells II LLC, AG Bells, LLC, and DOES 1 through 25 (collectively, "Defendants"), asserting violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (the "ADA"), and its implementing regulations. Defendants collectively own, lease, and/or operate at least ninety (90) Taco Bell restaurants in the states of Illinois, Indiana, Kentucky, Ohio, and West Virginia. Ms. Aigner's claims arise from her own experience with excessive sloping conditions in purportedly accessible parking spaces, access aisles, and curb ramps ("Parking Area" or "Parking Areas") at places of public accommodation owned, operated,

controlled, and/or leased by Defendants ("Defendants' facilities"), and from site investigations at seven (7) of Defendants' facilities also finding excessive sloping conditions.

2. Ms. Aigner asserts that these excessive sloping conditions persist in part as a result of Defendants' existing but inadequate internal maintenance policies, practices and/or procedures, which fail to ensure compliance with the sloping requirements of the ADA's implementing regulations. *See* 28 C.F.R. §§ 36.101 *et seq*.

3. The ADA expressly authorizes the injunctive relief aimed at modification of **existing** policies, practices, and/or procedures that Ms. Aigner seeks in this action. In relevant part, the ADA states:

> In the case of violations of . . . this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities. … Where appropriate, injunctive relief shall also include requiring the . . . modification of a policy…
>
> 42 U.S.C. § 12188(a)(2).

4. Based on the extensive factual investigation performed by Ms. Aigner's investigators, she believes and therefore asserts that numerous additional facilities owned, controlled, and/or operated by Defendants have Parking Areas that are, or have become, inaccessible to individuals who rely on wheelchairs for mobility due to excessive sloping, demonstrating that Defendants' existing internal maintenance policies, practices and/or procedures (discussed at ¶¶ 19-29 below) are inadequate and must be modified. 42 U.S.C. § 12188(a)(2).

5. Ms. Aigner brings this action individually and on behalf of all other similarly situated wheelchair users to compel Defendants to (i) remediate all access barriers within the Parking Areas of their facilities, and (ii) modify its existing policies, practices and/or procedures to ensure that its facilities comply with the ADA's implementing regulations' excessive sloping requirements. 28 C.F.R. §§ 36.101 *et seq*.

6. Consistent with 42 U.S.C. § 12188(a)(2), Ms. Aigner seeks a permanent injunction requiring that:

   a. Defendants remediate excessive sloping within the Parking Areas at Defendants' facilities, consistent with the ADA's implementing regulations;

   b. Defendants modify its existing policies, practices and/or procedures to ensure that the excessive sloping conditions within the Parking Areas at Defendants' facilities do not reoccur; and

   c. Plaintiff's representatives shall monitor Defendants' facilities to ensure that the injunctive relief ordered pursuant to Paragraph 6.a. and 6.b. has been implemented and will remain in place.

7. Plaintiff's claims for permanent injunctive relief are asserted as class claims pursuant to Fed. R. Civ. P. 23(b)(2). Rule 23(b)(2) was specifically intended to be utilized in civil rights cases where the Plaintiff seeks injunctive relief for her or her own benefit and the benefit of a class of similarly situated individuals. To that end, the note to the 1996 amendment to Rule 23 states:

> Subdivision(b)(2). This subdivision is intended to reach situations where a party has taken action or refused to take action with respect to a class, and final relief of an injunctive nature or a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, is appropriate . . .. Illustrative are various actions in the civil rights field where a party is charged with discriminating unlawfully against a class, usually one whose members are incapable of specific enumeration.

## **PARTIES**

8. Plaintiff Kimberly Aigner is, and at all times relevant hereto was, a resident of Montgomery, Illinois. Ms. Aigner is a person with a mobility disability. Ms. Aigner suffered a T-10 spinal cord injury when a bullet was fired through the back of her car and hit her spine.

9. Ms. Aigner is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2), and the regulations implementing the ADA set forth at 28 C.F.R. §§ 36.101 *et seq*.

10. Defendant AG Bells II LLC is, and at all times relevant hereto has been, a Nebraska limited liability company, doing business in Illinois as the owner, lessee, and/or operator of dozens of Taco Bell restaurants. Defendant AG Bells II LLC's principal place of business is located at 2400 N Broadway, Pittsburg, Kansas 66762.

11. Defendant AG Bells, LLC is, and at all times relevant hereto has been, a Nebraska limited liability company, doing business in Ohio and Kentucky as the owner, lessee, and/or operator of dozens of Taco Bell restaurants. Defendant AG Bells, LLC's principal place of business is located at 2400 N Broadway, Pittsburg, Kansas 66762.

12. The true names and capacities, whether individual, corporate, associate, or otherwise of the Defendants named herein as DOES 1 through 25, are unknown to Plaintiff at this time. Ms. Aigner will amend this Complaint to assert their true names and capacities when known. She is informed and believes, and thereon asserts, that each of the fictitiously-named Defendants is responsible in some manner for the occurrences asserted in this Complaint.

13. Ms. Aigner asserts that Defendants, including DOE Defendants, and each of them at all times mentioned in this Complaint were the alter egos, affiliates, agents and/or employees and/or employers of their Co-Defendants, under shared management, ownership, and common control of each other, and part of a single franchise group, and in doing the things asserted in this Complaint were acting within the course of such agency, affiliation, shared management, ownership, control, and/or employment and with the permission and consent of their Co-Defendants.

14. Ms. Aigner is further informed and believes, and based thereon alleges, that Defendants collectively own, lease, and/or operate approximately ninety (90) Taco Bell restaurants in the states of Illinois, Indiana, Kentucky, Ohio, and West Virginia, as described herein.

15. Defendants' facilities are places of public accommodation as defined in 42 U.S.C. §12181(7) and are therefore subject to the requirements of the ADA.

## FACTUAL ASSERTIONS

**Ms. Aigner Has Been Denied Full and Equal Access to Defendants' Facilities**

16. Ms. Aigner visited Defendants' facilities located at 3143 North Milwaukee Avenue, Chicago, Illinois 60618, where she experienced unnecessary difficulty and risk of physical harm exiting and entering her vehicle and navigating the facilities due to the unlawful sloping conditions in Defendants' purportedly accessible Parking Areas. Specifically, the parking facilities featured excessive sloping conditions which violated federal regulations, as set forth in more detail below.

17. Despite this difficulty and risk, Ms. Aigner plans to return to Defendants' facilities. Plaintiff often travels to the area for a variety of reasons. In November 2024, she traveled through the area to visit the Chicago Theatre for a show with a friend. Ms. Aigner travels through the area on her way to Chicago multiple times a month. During those visits Ms. Aigner intends to patronize Defendants' facility due to the convenience of picking up food quickly for her journey. Furthermore, she intends to return to Defendants' facility to ascertain whether it remains in violation of the ADA.

18. As a result of Defendants' non-compliance with the ADA, Ms. Aigner's ability to access and safely use Defendants' facilities has been significantly impeded and she will be deterred from returning to and fully and safely accessing Defendants' facilities due to the discrimination she has previously encountered there.

5

**Defendants Repeatedly Deny Individuals with Disabilities**

**Full and Equal Access to Defendants' Facilities**

19. As the owner and/or operator of their facilities, Defendants employ centralized policies, practices, and/or procedures with regard to the alteration, maintenance, and operation of their facilities.

20. Ms. Aigner is informed and believes, and based thereon alleges, that as Taco Bell franchisees pursuant to franchise agreements, Defendants utilize an "Answer System" commonly referred to a "Manual" (the "Manual") issued by the franchisor when the franchise disclosure document ("FDD") is signed. The Taco Bell's FDD that Defendants are subject to is similar, if not identical, to a previous version found publicly at https://www.franchimp.com/?page=pdf&f=107446_2022.pdf. It is Ms. Aigner's belief that the 4,500-page Manual contains the franchisee's obligations regarding the required "methods, standards, and procedures" and the franchisee agrees to comply with the Manual. FDD at 13. While the Manual is not available publicly, the FDD provides the Table of Contents. FDD at 196-197, Exhibit G.

21. Pursuant to the FDD, Defendants are provided with the Manual and all the accompanying materials, that provide the standards that the franchisee is required to follow—containing "standards, specifications, systems, procedures, requirements and instructions." FDD at 86. Specifically, the FDD states, in relevant part:

6

> You must operate your facilities according to methods, standards, and procedures (the "System") that we provide in minute detail. The System is the sole property of us and our affiliates and is embodied in the Franchise Operations Manual, commonly referred to as the Answer System (the "Manual"). We will provide the Manual to you via electronic access to a confidential website, which website also contains our on-line training courses, commonly referred to as OneSource. You agree that it is your responsibility to provide access to the website to those of your employees (but no other persons) for whom the website is intended by us. Your failure to follow the System as described in the Manual is a breach of the Franchise Agreement.
>
> . . .
>
> 3.4 The Franchisee understands, acknowledges and agrees that strict conformity with the System, including the standards, specifications, systems, procedures, requirements and instructions contained in this Agreement and in the Manual, is vitally important to the success not only of the Company, but to the collective success of all Taco Bell franchisees, including the Franchisee, by reason of the benefits all franchisees and the Company will derive from chain uniformity in food products, identity, quality, appearance, facilities and service among all TACO BELL RESTAURANTS. Any failure to adhere to the standards, specifications, requirements or instructions contained in this Agreement or in the Manual shall constitute a material breach of this Agreement.

FDD, at 42, 86.

22. The FDD further mandates compliance with "[a] variety of regulations, laws, and ordinances govern the operation of a restaurant business." The FDD also specifically cites compliance with the ADA as an express requirement. FDD at 14 (stating "[e]xamples include . . . the Americans with Disabilities Act of 1990 ("ADA") governing public accommodations. There may be other laws applicable to your business and we urge you to make further inquiries about these laws. You must comply with all local, state, and federal laws and regulations in the operation of your restaurants.").

23. Pursuant to the FDD, Defendants are required to maintain the Restaurant buildings' interior and exterior in compliance with the maintenance policies, practices, and procedures related to "Daily Outside Maintenance." The FDD states:

> 5.0 The Franchisee shall, at the Franchisee's sole cost and expense, maintain and repair the Restaurant, related equipment, signage, improvements, landscaping and the Restaurant premises in conformity with the standards, specifications and requirements of the System, as the same may be designated by the Company from time to time, and as appropriate replace any or all of such items (other than the Restaurant building or premises).

FDD, p. 386.

24. Should Defendants build a new facility, the FDD specifically requires that an ADA inspection be conducted to ensure full compliance with the the statute's requirements. The FDD states, "[y]ou must also pay YRSG directly for all ADA inspection costs (which are estimated to cost $2,250). Post Construction ADA Requirement 6.12 Client shall be solely responsible for a post construction Americans with Disabilities Act ("ADA") inspection of each Project (an "ADA Inspection"). Each ADA Inspection shall determine whether the Project complies with the ADA. The inspection shall be completed by a YRSG authorized consultant and a charge of $2,250 shall be added to this Agreement to insure the Project complies with ADA requirements." FDD at 178.

25. Defendants are also required to enter into lease agreements containing specific terms setting forth, among other things, Defendants' obligations to comply with the requirements of the ADA and the regulations promulgated thereunder, and to maintain, repair, and/or replace the parking lot, curbs, driveways, and sidewalks on the leased property. Ms. Aigner is further informed and believes, and based thereon alleges, that Defendants have entered into sale-leaseback agreements at several restaurants that are "absolute NNN" or "zero NNN" in nature—for a period of twenty years—meaning the lessee has absolute responsibility for maintaining all the features of the property and the landlord has no responsibility for such maintenance.

26. The FDD requires Defendants to designate a restaurant training manager that will be certified by Taco Bell. The FDD states, "we require that you and one manager successfully complete the training program to our satisfaction" and "[t]raining is conducted by a restaurant

8

training manager we certify, in an approved company owned restaurant that is geographically convenient to the attendees whenever possible and, for franchise applicants, should be scheduled to finish 4 to 6 weeks prior to the scheduled opening of your Unit." FDD at 41. The FDD further states:

> We require that all new franchisees attend our Starting Bell brand immersion course at our Restaurant Support Center in Irvine, CA. This course is additional to and separate from the required restaurant training described in the table below. It is a 3-day course at which new franchisees will develop the tools and know how to become a successful Taco Bell franchisee, experience and become champions of the Taco Bell Brand Soul, learn about our growth strategy and meet and develop relationships with Business and Operations support teams and other franchisees.

*Id.*

27. Due to the significant number of locations and geographic distances, Defendants manage compliance with their centralized policies, practices, and/or procedures concerning its daily outside maintenance obligations, and obligations to maintain, repair, and/or replace features within its Parking Areas, through a director of operations. The director of operations supervises area supervisors or regional managers, who in turn directly supervise assistant general or general managers, and then individual restaurant managers. Plaintiff is informed and believes that collectively, these positions constitute the "Principal Operator" charged with overseeing operations of Defendants' restaurants for compliance with Taco Bell's franchise requirements through regular and complete inspections of Defendants' restaurants.

28. Defendants' centralized maintenance and operational policies, practices, and/or procedures have systematically resulted in excessive sloping conditions in the Parking Areas of Defendants' facilities, in violation of the ADA and its implementing regulations.

29. On Plaintiff's behalf, field investigators examined multiple locations that Plaintiff is informed and believes are owned, controlled, and/or operated by Defendants, and found the following violations which are illustrative of the fact the Defendants' existing policies, practices,

and/or procedures are discriminatory, unreasonable, inadequate, and routinely result in excessive sloping conditions in the Parking Areas:

- a. 3143 North Milwaukee Avenue, Chicago, Illinois

    - i. The purportedly accessible landing at the top of the curb ramp to the building, and at the entrance to the building, had a running and cross slope exceeding 2.1%.

- b. 2019 Centennial Boulevard, Independence, Kentucky

    - i. The parking surface of one or more purportedly accessible parking spaces and access aisles within the Parking Area had slopes exceeding 2.1%[1].

- c. 14 Martha Layne Collins Boulevard, Cold Springs, Kentucky

    - i. The purportedly accessible curb ramp projected into an access aisle.

- d. 5060 Delhi Avenue, Cincinnati, Ohio

    - i. The parking surface of one or more purportedly accessible parking spaces and access aisles within the Parking Area had slopes exceeding 2.1%.

- e. 9270 Plainfield Road, Cincinnati, Ohio

    - i. The parking surface of one or more purportedly accessible parking spaces and access aisles within the Parking Area had slopes exceeding 2.1%;
    - ii. The purportedly accessible curb ramp projected into an access aisle.

- f. 582 West Main Street NW, Bourbonnais, Illinois

    - i. The purportedly accessible curb ramp projected into an access aisle.

- g. 2721 Rose Street, Franklin Park, Illinois

    - i. The purportedly accessible landing at the top of the curb ramp to the building had a running and cross slope exceeding 2.1%.

As evidenced by the widespread excessive sloping conditions present in the Parking Areas of Defendants' facilities, absent a change in Defendants' existing policies, practices and/or

---

[1] Pursuant to the ADAAG 2010 Standards, parking spaces or access aisles may not have slopes steeper than 1:48, i.e., 2.1%. *See,* 36 C.F.R. part 1191, § 502.4. The 2010 Standards continued the 1991 Standards without change. *See,* Appendix D to 28 C.F.R. Part 36, § 4.6.3.

procedures, excessive sloping conditions will continue to reoccur in Defendants' facilities even after they have been remediated.

## JURISDICTION AND VENUE

30. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188.

31. Ms. Aigner's claims asserted herein arose in this judicial district, and Defendants do substantial business in this judicial district.

32. Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2) in that this is the judicial district in which a substantial part of the events and/or omissions at issue occurred.

## CLASS ASSERTIONS

33. Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23(a) and 23(b)(2) on behalf of herself and the following nationwide class:

> All wheelchair users with qualified mobility disabilities who encountered excessive sloping conditions within the Parking Areas at any AG Bells II LLC, AG Bells, LLC and DOES 1 to 25 locations.

34. Numerosity: The class described above is so numerous that joinder of all individual members in one action would be impracticable. The disposition of the individual claims of the respective class members through this class action will benefit both the parties and this Court and will facilitate judicial economy.

35. Typicality: Plaintiff's claims are typical of the claims of the members of the class. The claims of Plaintiff and members of the class are based on the same legal theories and arise from the same unlawful conduct.

36. Common Questions of Fact and Law: There is a well-defined community of interest and common questions of fact and law affecting members of the class in that they all have been

11

and/or are being denied their civil rights to full and equal access to, and use and enjoyment of, Defendants' facilities and/or services due to Defendants' failure to make their facilities fully accessible and independently usable as above described.

37. <u>Adequacy of Representation</u>: Plaintiff is an adequate representative of the class because her interests do not conflict with the interests of the class members. Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the members of the class, and she has no interests antagonistic to the members of the class. Plaintiff has retained counsel who are competent and experienced in the prosecution of class action litigation, generally, and who possess specific expertise in the context of class litigation under the ADA.

38. Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the class as a whole.

## <u>SUBSTANTIVE VIOLATION</u>

## VIOLATION OF THE ADA, TITLE III

### [42 U.S.C. §§ 12101, *et seq.*]

### (Against all Defendants)

39. Plaintiff restates each and every assertion set forth in the foregoing paragraphs of this Complaint with the same force and effect as if more fully set forth herein.

40. At all times relevant to this action, Plaintiff has been substantially limited in the major life activity of mobility. Accordingly, she is an individual with a disability defined by the ADA, 42 U.S.C. § 12102(2).

41. Defendants own, lease, and/or operate restaurants that are places of public accommodation as defined under Title III of the ADA. 42 U.S.C. § 12181(7)(F).

42. Plaintiff is informed and believes, and based thereon asserts, that Defendants' facilities were altered, designed, or constructed after the effective date of the ADA.

43. The ADA and the franchise agreements require the accessible features of Defendants' facilities, which include Parking Areas of its facilities, to be maintained so that they are readily accessible to and usable by individuals with mobility disabilities.

44. The architectural barriers described above demonstrate that Defendants' facilities were not constructed or altered in a manner that caused them to be readily accessible to and usable by individuals who use wheelchairs in the first instance and/or after that were not maintained or operated to ensure that they remained accessible to and usable by individuals who use wheelchairs.

45. Furthermore, the architectural barriers described above demonstrate that Defendants have failed to remove barriers as required by 42 U.S.C. § 12182(b)(2)(A)(iv).

46. Defendants repeated and systemic failures to remove architectural barriers, to maintain the accessible features of their facilities, and/or modify its existing policies, practices and/or procedures to ensure compliance with the sloping requirements of the ADA's implementing regulations once constructed constitute unlawful discrimination on the basis of a disability in violation of Title III of the ADA.

47. Defendants' conduct is ongoing and continuous, and Defendants' conduct has harmed Plaintiff.

48. Unless Defendants are restrained from continuing its ongoing and continuous course of conduct, Defendants will continue to violate the ADA and will continue to inflict injury upon Plaintiff and the class.

49. Remediation of Defendants' facilities is readily achievable and can be accomplished and carried out without significant difficulty or expense due to the straightforward

nature of the necessary modifications. The necessary modifications are low cost, and Defendants have the financial resources to complete them.

50. Given that Defendants have not complied with the ADA's requirements to make Defendants' facilities fully accessible to, and independently usable by, individuals who use wheelchairs, Plaintiff invokes her statutory rights to declaratory and prospective injunctive relief, as well as costs and attorneys' fees.

## PRAYER FOR DECLARATORY JUDGMENT AND PROSPECTIVE INJUNCTIVE RELIEF

WHEREFORE, Plaintiff, on behalf of herself and the members of the Class, prays for:

a. A declaratory judgment that Defendants are in violation of the specific requirements of Title III of the ADA described above, and the relevant implementing regulations of the ADA, in that Defendants' facilities, as described above, are not fully accessible to, and independently usable by, individuals who use wheelchairs;

b. A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 C.F.R. § 36.501(b) that (i) directs Defendants to take all steps necessary to remove the architectural barriers described above and to bring its facilities into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that the facilities are fully accessible to, and independently usable by, individuals who use wheelchairs; (ii) directs Defendants to modify its existing policies, practices and/or procedures to prevent the reoccurrence of excessive sloping conditions in the Parking Areas of its facilities post-remediation; and (iii) directs that Plaintiff shall monitor Defendants' facilities to ensure that the injunctive relief ordered above remains in place.

c. An Order certifying the class proposed by Plaintiff, naming Plaintiff as class representative, and appointing her counsel as class counsel;

d. Payment of costs of suit;

e. Payment of reasonable attorneys' and monitoring fees pursuant to 42 U.S.C. § 12205 and 28 C.F.R. § 36.505; and

f. The provision of whatever other relief the Court deems just, equitable, and appropriate.

Dated: February 6, 2025

Respectfully Submitted,

Benjamin J. Sweet
Jonathan D. Miller
**NYE, STIRLING, HALE, MILLER & SWEET, LLP**
101 Pennsylvania Boulevard, Suite 2
Pittsburgh, PA 15228
Phone: 412-857-5350
ben@nshmlaw.com

Jordan T. Porter
*Pro hac vice admission to be filed*
**NYE, STIRLING, HALE, MILLER & SWEET, LLP**
33 West Mission Street, Suite 201
Santa Barbara, CA 93101
Phone: 805-963-2345
jordan@nshmlaw.com

*Attorneys for Plaintiff and the Class*